DOUCET, Judge.
The issue presented is whether a fuel consumption warranty existed between the buyer and seller of a diesel engine used for the operation of an irrigation well.
Rocky Duplichan brought suit against Welsh Equipment Company, Inc. seeking a rescission of the sale and damages arising out of the purchase of a diesel engine used for the operation of an irrigation well. The suit was brought under the provisions of La.C.C. art. 2475 which reads as follows:
“The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells.”
The plaintiff alleges that the warranty made by the defendant, through its agents, concerning maximum fuel consumption, was breached causing the plaintiff to pay for excessive fuel consumption. From a judgment of the trial court dismissing the claim, plaintiff appeals. We affirm.
The plaintiff contends that the trial court erred in its finding that no warranties were made by defendant as to maximum fuel consumption.
Rocky Duplichan and his father, Elwell, operate a rice farm in Jefferson Davis Parish. In October 1980, Elwell Duplichan negotiated with Kenneth Daniel, of Welsh Equipment, for the purchase of a VM Diesel Engine. The purchase price of $13,-800.00 was agreed upon. The engine was delivered and installed in January 1981 on a new 10" water well which was to supply water for the plaintiff’s rice crop. The engine was put into operation and, as plaintiff’s counsel admits in brief, the engine operated properly, producing an adequate water supply for the rice crop. The sole complaint of the plaintiff is that the engine used more fuel than was represented by Kenneth Daniel, vice-president of defendant.
As to the discussion of the fuel consumption of the engine, this took place between Elwell Duplichan and Kenneth Daniel. Du-plichan testified that Daniel told him that the engine would consume no more than approximately 7 gallons of diesel fuel per hour. He further stated that, after testing the engine, it consumed 10.4 gallons per hour. He stated that, had he known that the fuel consumption would have been 10.5 gallons per hour, he would not have purchased the engine. On the other hand, Kenneth Daniel, who was a mechanical engineer and had 25 years of experience with diesel engines, testified that he didn’t guarantee Duplichan anything in the way of fuel consumption. He stated that he discussed fuel consumption, showed Dupli-chan the curve chart put out by the manufacturer, which reflects that the more horsepower required of an engine, the higher the fuel consumption. He felt that the water well in question could be operated at approximately 150 horsepower which would be under 8 gallons per hour. As it turned out, the well was a highly productive well, capable of producing a water *685 volume higher than normal. The result was that the engine was being run at approximately 190 horsepower, producing a larger volume of water but using 10.5 gallons per hour.
Elwell Duplichan complained about the fuel consumption and Daniel brought the engine to their shop for fuel tests. The test results were almost exactly according to the curve charts of the manufacturer. The engine was reinstalled and was run for about 1,300 hours to complete the crop season.
The defendant also called Edward Co-meaux, an expert diesel mechanic who was general manager of M & L Industries of Houma, Louisiana. He stated that Daniel asked him to check the engine in the summer of 1981. He examined the engine which was in operation. He found it working perfectly. He also inspected the test results in the shop and found they were satisfactory. As he stated, the horsepower being exerted by an irrigation engine is directly related to the volume of water being moved. In this case he found that the engine was producing 190 horsepower in order to discharge the large volume of water produced by the plaintiff. To decrease the fuel consumption, the horsepower could have been lowered to 160. This, however, would have the effect of producing less water.
The trial court accepted the testimony of the defendant’s witnesses when it stated in its written reasons that:
“[W]hile the fuel consumption of the diesel engine in question was discussed pri- or to the sale, no warranty or promise of a maximum fuel consumption was made by any authorized representative of the engine manufacturer or of the defendant, Welsh Equipment Company, Inc. At most, opinions were given as to how the engine would perform under specifically discussed conditions. No warranties were made as to maximum fuel consumption.”
Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon appellate review. After a complete review of the trial record and considering the evidence as a whole, we find that the trial court was not manifestly erroneous.
For these reasons, the judgment of the trial court is affirmed. The plaintiff-appellant shall pay the costs of this appeal.
AFFIRMED.